## SWIFT v. SWIFT et al.

Where a legatee under the terms of a will entered into an agreement with the executors and the other legatees, which was made for the purpose of effecting a speedy division of the estate "without sale of any of the property and to end all delay as to administration," and the agreement was executed, and a division of the estate was made according to the terms of the agreement, and the various items thereof were assigned and delivered to the several legatees, and a full and final settlement of the interests and rights of all the legatees in and to such estate was thereby accomplished, the legatee entering into the agreement referred to, who received and accepted his share of the property according to the terms of the compact, is not entitled to have the agreement and settlement set aside and vacated merely as to one item of the property distributed under the settlement, upon the ground that he was induced to enter into the agreement by false and fraudulent representations as to that item, without offering to rescind the entire agreement so as to restore the status quo.

Argued June 28, 1907.—Decided February 3, 1908.

Equitable petition. Before Judge Little. Muscogee superior court. November 20, 1906.

The plaintiff in this case, C. J. Swift, filed an equitable petition against E. W. Swift, E. M. Shorter, and A. B. Kyle, as individuals, and against E. W. Swift and J. P. Kyle as executors of G. P. Swift deceased, and alleged in substance the following facts: In 1897 said G. P. Swift died testate, bequeathing the residue of his estate to his five children, C. J. Swift (plaintiff), E. W. Swift, E. M. Shorter, A. B. Kyle (defendants), and H. W. Murphy. E. W. Swift, and J. P. Kyle qualified as executors. During the same year C. J. Swift and H. W. Murphy brought an action against the other three children of the testator, seeking the cancellation of certain conveyances to said defendants by their father. Subsequently Mrs. H. W. Murphy assigned her interest in the estate and in the suit to the three defendants. The suit remained pending in court, with C. J. Swift as the sole plaintiff. In the year 1899, in pursuance of an agreement to settle said suit, the parties executed the following instrument: "Memorandum of agreement this day made between E. M. Swift, A. B. Kyle, and E. M. Shorter, in their individual rights as legatees, and in their right as transferees of H. W. Murphy, legatee, parties of the first part, and C. J. Swift, legatee, party of the second part, and E. W. Swift and J. P. Kyle, as executors of the estate of G. P. Swift, parties of the

third part, made for the purpose of speedily dividing the estate without sale of any of the property, and to end all further delay as to administration. First. C. J. Swift, legatee, agrees to surrender and to convey to A. B. Kyle, E. M. Shorter, and E. W. Swift all his rights, title, and interest of every kind and character in said estate wherever it may be located, and also including all the property as shown by the attached list, except his one-fifth interest in the following, to wit: two-thirds interest in warehouse, two-thirds interest in vacant lot on Broad street, two-thirds interest in bank office, stores 1301-1303-1305, city lot 214 and part of city lot 211, all of which is known as the city property; the intention being that C. J. Swift is to have and retain his one-fifth interest therein, but to surrender his one-fifth interest in all the other property of the estate, including the stocks, bonds, money, and lands lying out of Columbus, Ga., as shown by said list. Second. In consideration of the foregoing, the executors will turn over to C. J. Swift any right, title, or interest of the other legatees, or any lien they may have thereon for commissions, the following property, to wit: Thirty Mtg. Muscogee Mfg. Co. bonds; the satisfied order from A. P. French with principal and interest paid, the same aggregating $459.97, which has been accepted by the executors at request of C. J. Swift; ten shares of the capital stock of the Muscogee Mfg. Co. Third. All debts of the estate now unpaid and all claims for commission are to be paid and charged to the interest of E. W. Swift, A. B. Kyle, and E. M. Shorter. Fourth. The suit now pending in Muscogee superior court, in name of C. J. Swift and H. W. Murphy against A. B. Kyle, E. M. Shorter, and E. W. Swift, for setting aside certain deeds, is to be dismissed at plaintiff's cost; and C. J. Swift is to give a release to said defendants of any and all claim he has or may have in any of his alleged interest to the property involved in that suit. Fifth. What is known as the Muscogee Mfg. Capital Stock Pool is to be cancelled, the stock to be transferred to E. W. Swift, A. B. Kyle, and E. M. Shorter at their option, C. J. Swift withdrawing from the pool. Sixth. The 1,000 shares of Ostrander Gun Co. stock, and the one-twentieth interest in the Swift Nozzle are to be transferred to C. J. Swift absolutely. . . Eighth. By this agreement C. J. Swift, accepting thirty 2nd mtg. bonds, the payment of the French order, and one-fifth of the

city realty, agrees to relinquish and quitclaim to E. W. Swift, A. B. Kyle, and E. M. Shorter, as legatees, and transferees of H. W. Murphy, as legatee, all his right, title, and interest of every kind in and to the estate of his father, G. P. Swift, . . and agrees to deliver to the executors a full and final receipt of all interest he may have in the said estate."

Settlement was made in accordance with the above agreement. The property so divided was valued at $209,666. Plaintiff alleges that before entering into the said agreement, whereby he agreed to quitclaim to the defendants his interest in all lands lying outside of the city of Columbus, Ga., he called upon the executors to render him a full and complete list of all undivided property belonging to said estate, together with the values of the same. In the list so furnished by the executors is an item of 2,095 acres of land in Thomas county, valued at $2 per acre. Plaintiff alleges, that, in addition to the value given in said list to said land, the defendants assured plaintiff that the said Thomas county land had been so despoiled of the timber on it as to render it worthless as timber land; that prior to said settlement plaintiff was a resident of the State of California, and was ignorant of the value of said land; and having confidence in the defendants, and in the list prepared by the executors, he was induced to sell his interest in the said Thomas county lands to the defendants for the sum of $2 per acre. Plaintiff alleges further that the statements of the defendants as to the value of said land were false and fraudulent and made for the purpose of inducing plaintiff to enter into the agreement above set out, and that this fraud was not discovered by the plaintiff till 1904. Wherefore petitioner prays, "That this court by a proper decree declare that so much of said agreement made 1st and 10th day of July, 1898 [the agreement above set out], in settlement and dismissal of the equitable petition, including the said 2,095 acres of Thomas county timber lands, to be null and void, and that the title to a one-fifth undivided interest in said 2,095 acres of land do vest in your petitioner, his heirs and assigns, and that so much of said agreement of settlement as relates to and includes the 2,095 acres of Thomas county lands be brought into court and cancelled," plaintiff offering to pay to defendants the price paid by defendants for said land.

To this petition defendants filed a general and a special de-

murrer. The court sustained the general demurrer, and the plaintiff excepted. In dismissing the petition, the court rendered the following judgment: "The petition in this case seeks to set aside and cancel a specific part of two certain agreements, by the one of which, for a named consideration, the petitioner relinquished all claims to the assets and property of his father's estate in favor of the other légatees; and by the other, for the same consideration, he conveyed all his interests in the estate to the other legatees. The particular part of such agreement and conveyance sought to be set aside is that by which petitioner relinquished to the other legatees all his interest (being one fifth) in 2,095 acres of land in Thomas county, Ga., on a valuation of two dollars per acre; and the cause assigned for setting aside and cancelling this portion of such agreement is, that the defendants, who were acquainted with the land and its value, grossly misrepresented the character and value of the same to petitioner, who did not know and who could not have ascertained the same; that petitioner relied on such representations, acted on the same; and that the land was then worth $10 or more per acre, and he was grossly defrauded by such misrepresentations. It appears that the estate of Geo. P. Swift, father of petitioner, was a very large and valuable one, consisting of real estate, stocks, bonds, and other personal property, the whole aggregating in value approximately $201,000. There had been some dissatisfaction on the part of the plaintiff concerning some conveyances of realty by the testator prior to his death, and a petition had therefore been filed by petitioner and a sister, seeking to set aside certain of these conveyances; overtures for a settlement resulted in the execution and delivery of these two agreements, the first of which recites that it was made 'for the purpose of speedily dividing the estate without sale of any of the property, and to end all further delay as to administration;' and each of the instruments sought to be set aside in part evidenced the settlement as to petitioner the whole of his interest in this estate. Under these terms, he took and was paid in property large values, and was relieved of liability as to the debts of the estate, and a part of the consideration moving to him to convey to the defendants his interests in all of the estate of his father, including his one-fifth interest in the Thomas county lands, was the reception by him of different items of real and personal property, and a com-

plete settlement with him for his interest in the estate. Now he complains of only one item, that is the Thomas county lands; this item he alleges was undervalued, and in the settlement he conveyed his interest in this item because of misrepresentations of the value of that item by the executors and legatees. Can he legally set aside the contract as to this item and the conveyance of his interest therein, which was only a part of the settlement, because of misrepresentations as to the value of this single item? No complaint is made as to the valuation of the other items of this large estate. No allegation is made that there was any other fraud. No suggestion is made that the defendants are unable to respond in damages. If this particular item should be set aside as fraudulent, would it not have the effect of breaking up the entire settlement made; and can this be done without restoring or offering to restore the status quo of the parties as to all matters at the time of the 'full and final settlement?' No offer to do so is made. It was early held that if there is only a partial failure of performance, for which there may be compensation in damages, the contract is not put an end to, and a party may not treat a contract as rescinded if the failure of the other party be but partial, leaving a distinct part as a subsisting and executed consideration, and leaving also to the other party his action for damages for the part not performed."

*James L. Willis* and *Charles J. Swift,* for plaintiff.

*Goetchius & Chappell,* for defendants.

BECK, J. (After stating the facts.) We think that the conclusion reached by the learned judge who heard this case in the court below was correct and based upon sound reasoning. We do not think that the plaintiff was entitled, on the facts alleged, to have the contract and the full and final settlement set aside or rescinded as to one item thereof because of his having been induced to surrender and convey his interest in that particular item to the other parties to the contract by their fraudulent misrepresentations as to the value of this one particular item, no offer being made to rescind the entire agreement or set aside the entire contract, so as to restore the status quo.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*